Case Numbers 241526 and 241528 Michelle Pearson et al. v. Michigan Department of Corrections et al. Argument not to exceed 15 minutes per side. Mr. Smith, you may proceed. Good afternoon, Your Honor. May it please the Court? Assistant Attorney General Joshua Smith on behalf of Defendant's Appellants, and I'd like to reserve three minutes for rebuttal, if I may. Now, Defendant's Appellants in this case are asking this Court to reverse the District Court judgment, or excuse me, the District Court's denial of qualified immunity for them. And the reason they're asking that is it's not clearly established in this circuit that SCABE's, in a correctional context, violates the Eighth Amendment, either as a condition of confinement or as a matter of deliberate medical indifference. Now, this Court is, of course, very familiar with the qualified immunity test. For a governmental official to be liable, the plaintiffs have to show that they violated an established constitutional right that was clearly established at the time of the alleged conduct. Now, in this case, that would be no later than early March of 2019 when the plaintiffs filed suit in this matter. At that point, it was not clearly established, and I would submit is still not clearly established in this circuit that SCABE's violates the Eighth Amendment. Do you concede that it does, and that there's just not a case on point, or are you disputing? If you could clarify, are you... As an original matter, set aside qualified immunity, there's a two-part test. One is objectively serious. And I'm curious whether you're conceding that it is objectively serious, and it's not clearly established, or you're... I'm not. Sorry to cut you off. Yeah, go ahead. I'm not conceding that. I think our stronger argument is probably the clearly established prong, because it is not clearly established in this circuit. Do you think there's an interrelationship between... I think the objective... Let me start over. I think the objective serious medical need comes from the phrase cruel and unusual punishment. And medical needs that don't rise to a certain level are not cruel and unusual. I think that's the basis for that. And so if we were to say that SCABE's is not an objectively serious medical need, wouldn't that be, in essence, suggesting that states could intentionally give inmates SCABE's, and there would be no Eighth Amendment problem with that as a punishment? No, I don't think it would be saying that. And this is sort of skipping ahead to some other cases. But there is actually a line of cases from the United States Supreme Court that specifically says a couple of things. First of all, you can't have this outrageous conduct that shocks the conscience. And I think the cases, they were cited in both of the parties' briefs. Hope v. Pelzer is one of them, and Taylor v. Riojas. In both of those cases, there were conditions of confinement that were outrageous, for lack of a better term. Right, but those aren't serious medical needs cases. Those are conditions of confinement cases. So I think Judge Murphy is asking a slightly different question. Yeah, I think actually the Finley case, which is a case this Court decided a little over a year ago, shed some light on that. Now, in Finley, the Court denied qualified immunity. But one of the things it held was that it is, in fact, clearly established that prison officials cannot take conduct that affirmatively harms or worsens the condition of a prison inmate. So for the hypothetical you gave, Judge Murphy, no. That is clearly established that regardless of the condition, and I think it goes to both conditions of confinement and medical needs, that no, you can't affirmatively do something that could give someone scabies. I mean, you could come up with thousands of examples. The Hutto v. Finney case is one that comes offhand, where the State of Arkansas packed about 10 to 11 inmates into a single cell. Some of them had hepatitis, some of them had venereal diseases, I believe they had a single mattress, they had no water other than a toilet, and the flush handle was on the outside. You can't affirmatively take action that endangers prison inmates. And I think when we look at clearly established... In terms of clearly established, would you at least concede that you don't need a case about scabies? But if there was a case about an equally equivalent medical condition, so like a skin rash or something analogous to that, if we had a precedent that said that that was an objectively serious medical need, that that would be enough. You wouldn't need a case specifically about scabies? It could be. And once again, I'm going to refer to a couple of cases that actually went against state defendants where this court said they were clearly established. Because I think when you show the rule, it's going to show how it doesn't apply here. I'm going to start with Finley again. And in Finley, the prison administrators in that case placed Mr. Finley, who was concededly, there was no dispute that he was an individual suffering from mental illness. He was placed into what prison officials referred to as administrative segregation, what this court referred to as solitary confinement. The qualified mental health professional in that case said, you can't do that, it will in fact worsen his condition. And the defendants, who were the appellees in that case, argued that that wasn't clearly established. The district court agreed, this court reversed. And there were three different things that led to that decision, if you read Judge McKeague's decision carefully. And first of all, it's clearly established that prison officials have an affirmative duty to provide psychiatric care to mentally ill inmates. That wasn't contested. Second, and what I just said earlier, Your Honor, prison officials cannot take affirmative conduct that actually harms a prison inmate. And in this case, the two prison officials that placed Mr. Finley in administrative segregation did just that, because they went against the advice of a qualified mental health professional. Now, the third prong of the decision was what Judge McKeague referred to as a robust consensus. And that is, although it wasn't clear in this circuit, other circuits through published decisions, and I believe he cited about four or five different published decisions, had warned of the dangers of particularly egregious forms of solitary confinement. So he looked and the court looked to that robust consensus. And in another case, Rhodes v. Michigan, very similarly, the court expressly stated, you don't have to have an opinion exactly on point, but you need signposts pointing you in the right direction. I mean, sort of like if you don't... Can we just apply this to the facts of this case? So why do we not have signposts? I guess I'm not, I'm wondering why we're concerned about the particular disease. Like this is caused by a mite. It's a mite that causes... I mean, the allegation is horrendous, unbearable itching pain. So I don't know, like, does that come from a mite? Does it come from some other sort of infection? It seems to me like it's the symptom that we should be worried about, not the cause. Otherwise we'd say, well, if you have scabies and you itch it so much that it leads to open wounds and those open wounds become infected and you go into some kind of shock, well, it was the mite that caused it, so you don't have to treat it. Surely that's not it. That is not it, Your Honor. So how does... Why do you think that an allegation of horrendous, unbearable itching pain is not sufficiently serious? There have been analogous cases in this circuit that have rejected that. I think the Santiago case is the one that's most on point. In that case, I'm not going to attempt to pronounce the malady because I'll only embarrass myself, but it went by the initials EN. It was an incurable skin condition. It caused pain. It caused considerable discomfort, and the plaintiff experienced that. This Court nonetheless held that that is not a serious medical condition under the Eighth Amendment. And when you look at this Court's jurisprudence and look at the types of cases that have been considered serious medical conditions under the Eighth Amendment, we're looking at, for instance, in Blackmore, it was appendicitis. In DARA, it was HPK, which is a severe form of psoriasis. In other cases, it was MS or diabetes. Psoriasis is a skin condition that causes... From watching television, it seems to cause lots of itching pain. That's why they try to sell you all these psoriasis creams on TV. I don't know. I don't know either, but what I do know is that the Court went out of its way to point out that it was HPK, which is a severe form of psoriasis rather than merely psoriasis. But this seems to be a severe form of scabies, horrendous, unbearable itching pain. Right. Can I ask you a slightly... I'm not sure we're going to get anywhere with this. Can I just ask you a different question? All four of the named plaintiffs, I assume that even though this is a putative class action, we only need to be focused on the four named plaintiffs before the Court and what their allegations are. That is correct, Your Honor. So all of them got some form of treatment. That is correct, Your Honor. So then under the Phillips case, we would say, well, even though they got some form of treatment, there could still be a claim if the delay in providing that treatment or the kind of treatment given was so inadequate as to shock the conscience. That is correct, Your Honor. So I guess the question I really have here is let's assume that scabies can cause the kind of pain that would be serious. Is the treatment provided here sufficient? I mean, maybe you want to speak to that, whether the treatment provided here was sufficient to fall above the level of conscience shocking or below the level, however you conceive of it. I think it falls below the level of conscience shocking, and it does not constitute deliberate indifference. Now, if you look at it, too, one of the things I noticed when I was reviewing the complaint is Ms. Pearson, for instance, complained of symptoms of scabies. I don't know that it's in the record that she was diagnosed with scabies. She had a rash. She had scabies-like symptoms. Right, but wouldn't she say that's because nobody took me to the doctor? Well, but she did go to the doctor. She reported problems associated with scabies to WHV Healthcare more than 10 times, and that's at paragraph 97 of the operative complaint. So she did report it, and she further alleges in the two paragraphs, or excuse me, one paragraph later, paragraph 98, MDOC officials provided unhelpful creams and a pill intended to treat worm infestations to try to treat the rash. So they did provide care. And if we look at Sheldon, Sheldon arrived, or excuse me, reported symptoms in July of 2018. In September she saw, or October, she saw a doctor. She was, a doctor performed a skin scraping that was negative. The allegation is that was done incorrectly, but that's not deliberate indifference if the doctor did it incorrectly. She was prescribed an unknown medication at an unknown time. In December of 2018, she was seen by an outside dermatologist, and one month later, she received multiple doses of a medication that was effective, although it was difficult to eradicate. So she clearly received medical care. So your position, your red light's on, but, so I take it that your position is, even if we were to assume that scabies can produce, a medical issue that is sufficiently serious, they got, not, not conscience shocking treatment. They got some treatment, and that treatment was sufficient to not shock the conscience. I would agree with that, and I would also say, before I finish up, that, yes, there's no deliberate indifference because they received the treatment, but in addition, it's still not clearly established in this circuit that scabies violates the Eighth Amendment. Can I ask one last question? So, 1983 usually requires a defendant-by-defendant approach because there's no vicarious liability, and we have to ask about each defendant's personal participation or connection to the offense. I noticed that your briefing, there's so many defendants in this case, and you didn't separate them. So what, what do we make of that? Do we make of that that it is an all-or-nothing proposition? Is it your view, at least at this stage, that it's an all-or-nothing proposition, or can we look at it on a defendant-by-defendant basis and ask each defendant's connection, including, for instance, the head of the Michigan Department of Corrections? Yeah, I think you can and should take a defendant-by-defendant look at it. One of the reasons for the stance on this court, Your Honor, is we did file a motion to dismiss on many grounds, and one of them was an 8A, a failure to make sufficient personalized allegations to each defendant. That was denied, but that's not part of our qualified immunity appeal because it doesn't go to either of the two prongs. But when you do look at 1983, yes, you have to assess it defendant-by-defendant. I guess the one pushback I would give is if you don't brief it, it doesn't seem appropriate for us to do that type of analysis. Fair enough. Judge White, did you have any questions? Thank you, Your Honors. Good afternoon. May it please the Court. My name is Rebecca Bailey and I represent the plaintiff appellees in this matter. We're not here today to talk about a simple, isolated case of scabies infecting one inmate or even the four named plaintiffs. We're here to talk about persistent and continuous deliberate indifference that started in 2016 and went at least until 2019, impacting hundreds of people. More than 10% of the incarcerated women in the state of Michigan were impacted during this time, and over eight of the 15 housing units at Women's Huron Valley Correctional Facility. Due to the size and sheer breadth of this issue, defendants repeatedly ignored the problem, time and time again, exposing inmates to hazardous, unsanitary living conditions, specifically an ongoing infestation, creating a risk of serious harm and depriving inmates of timely and effective treatment for a serious medical need. In starting with the serious medical need, intuitively I think there's a lot to say that it would be a serious medical need, but there seems to be a fair amount of debate in the district courts on whether it qualifies. I can cite one eastern district of New York case that suggests that in the Second Circuit, in fact, the Second Circuit and numerous district courts within the circuit have acknowledged that scabies and other similar skin conditions simply do not rise to the level of being sufficiently grave and serious to give rise to a deliberate indifference claim. And I guess my pushback would be on clearly established. How can we say it's clearly established that it does qualify if there is a fair amount of federal precedent for the idea that it doesn't? Your Honor, your question conflates the clearly established principle with the serious medical need principle, and I would submit we need to look at those one at a time. So it's a serious medical need as an original matter, but why wouldn't it not be clearly established simply because there's a lot of precedent suggesting it's not? The precedent you're pointing to is mostly unreported, out-of-circuit district court cases, and that just doesn't come into the clearly established right. Well, I agree with you. It cannot clearly establish, so it can't create the clearly established law. But can it be used as good evidence that it's not clearly established, at least when there's no precedent in our court, published precedent in our court on this point? I think if you're looking within the Sixth Circuit district court or unpublished Sixth Circuit cases, I would say that the weight of authority actually is that scabies infestations can or often are serious medical needs. You can look at the Acosta case. You can look at the Green case. That is what courts are ruling on here, but really the test that we get from Viegas for serious medical need is whether it's something that needs to be diagnosed for treatment, or if it's something that'll be so obvious a layperson would know it needs medical attention. So that's the test we have to apply in the given circumstances of a case. I'd submit to you this case wouldn't exist if somebody just got scabies. So it's not like just because an inmate gets scabies, all of a sudden we've violated a constitutional right. We have to put it in the context of the case as it was pled, which is that hundreds of women got scabies, attempted to access medical care, were denied or provided ineffective medical care, and this was an ongoing problem for a very long time before it was taken seriously by a Good Samaritan doctor who didn't even work for the facility who came in to try to test, treat, and diagnose the problem so they could move on. So you do have allegations in your complaint that before the Good Samaritan doctor, other doctors got involved and just misdiagnosed it, but the defendants on appeal aren't those doctors. So why isn't it okay for those defendants to have relied on the other doctor's non-diagnosis? That seems quite reasonable to me. They're not in the health care industry. They're just prison managers. They definitely, the officials at the facility control, they're the gatekeepers of medical care for the inmates. So they request medical care. They don't always receive it, as we see from the allegations. So that is how a prison official who's not a medical doctor can violate the right to... But it seems like from your allegations they at least got some care. So the doctor, I think you had allegations that at least, or maybe it's around the 2016 timeframe, that they requested care. The officials at least gave them access to doctors. Apparently these are incompetent doctors and didn't diagnose them appropriately. But that doesn't seem to me to be the fault of the prison administrators. That's the fault of the prison doctors. Correct. In this case the prison administrators would be responsible for them not receiving medical care, or in some cases for preventing medical care from being received. Plaintiff Garwood, for example, she was prescribed a medication that was never given to her. And she has to rely on the prison and the officials therein to provide that access. That medication wouldn't have been a treatment for scabies. Correct. So I guess you could kind of say harmless error. She was misdiagnosed, arguably. She was given a scabies test. The test came back negative. Then she was given a prescription for something else, not scabies. So I guess I don't know why the failure to give her that ineffective prescription is cruel and unusual. It wasn't going to help her. Your Honor brings up a good point, and that's another aspect of the case, which is that ineffective or cursory medical care that amounts to no treatment at all can also rise to the level of deliberate indifference to a serious medical need. We can look at the Dara case, that was the psoriasis case, the fissures on the feet, to show this point. So in that case, the inmate received treatment for 10 months, treatment that was known to be ineffective for the issue that he had. That is very similar to the creams that were being prescribed early on in this infestation to the prisoners. These creams weren't going to cure scabies. That's not a diagnosis, by which I mean they were assigned the creams because they were not diagnosed with scabies. And again, I don't know that that would be the administrator's fault. So there are some instances where there were tests. Those are later in the timeline. And those tests were done incorrectly because it took a while to get the process up and running. In the early days of this infestation, 2016, 2017, into 2018, they were simply just handing out over-the-counter creams and medications that weren't going to do anything to alleviate this particular problem. Why is that the fault of these defendants if it was simply misdiagnosis? Your Honor, when you're faced with an infestation at the level that existed at Women's Huron Valley during this time, the prison officials have a responsibility to take measures, preventative or otherwise, to contain or eradicate this issue. Of course, there are doctors in this case, and those, I think, specific arguments are probably best suited for the claims against them. But we do look at the prison officials who are aware of what's going on because of the kites coming in, because of the grievances coming in. They're aware of kind of how serious scabies is or how to eradicate it because there are protocols in place at the facility that are not being followed. So it's a combination. I mean, this is a conditions case and a serious medical need case, and it's a combination of both because even if you are treating the medical need appropriately, that inmate's just going to go back to her cell and get reinfested because the scabies live in the bedding, it lives in the clothes, it lives on your bunkmate if you're not getting quarantined. When do you allege that they knew it was scabies? Well, we allege that they knew it was scabies because it's obvious. You can see the problem with your own two eyes on these women. We allege that the women themselves complained about the problem and complained specifically that they had scabies. They did this audibly, but they also did this in written kites to the medical unit. They did it also in the grievance process, which goes not just to the medical unit but to the warden himself. Going back to your obvious point, I can't remember where I read this, so I apologize, but I thought I read somewhere that it's very hard to diagnose because a lot of the different types of rashes look alike. I'm sorry, that's not on the record in the pleading that I have, and I'm not a doctor, so I wish I had an answer for you, Your Honor. Sorry to cut you off. No worries. I just want to say a word about the Santiago case because that was a case that my colleague mentioned that also dealt with another kind of rash. I would submit, though, Judge Larson's point about DARA is I think that's the more analogous case for determining a clearly established right. But Santiago, the court there, did recognize that the issue could have... that the delayed medical care for serious medical need could amount to a violation of a clearly established right. It just didn't under those circumstances, and those circumstances are factually and meaningfully different. First of all, the rash at issue in that case, I mean the delay was a two-day delay to see a dermatologist specialist, and it was the kind of infection that went away on its own. There was no treatment to speed it up. It went away in six weeks. That was going to happen. Scabies, we know, doesn't go away on its own. It just gets worse, and it just spreads. And I think that's a meaningful distinction. So I think Judge White asked you when the prison officials, the higher-ups, or the defendants in this case, knew that it was scabies. And I think your answer is, well, it would have been obvious because there were rashes, but these officials aren't in the... some of the officials are in the prison, but most of them are not in the prison. So how would they have known? I'll take the warden, for example, because he's the highest level at the prison. The allegations are he personally attended skin scrapings, he personally observed with his own two eyes. Okay, but if you're going to a skin scraping, which is a test for scabies, and then so you see, oh, it might be scabies, and then the doctor tells you it's not scabies, you're supposed to second-guess the doctor if you're the warden? Well, there is no evidence that... there's no allegations that the doctors told Brewer that there wasn't scabies in this situation. But one of the women... I thought that the woman who got... of the named plaintiffs that we have, the woman who got scraped, it came back negative. The one woman who actually got that test of the four, that's correct. And that's not the one that the warden attended? No. I see. He regularly attended them. He also attended... But this must have been happening at some other time, or you're saying lots of women were getting tested for scabies, and the warden was there at the test, but you don't know that those tests came back positive. So that's confusing, too. Like, I don't know why we wouldn't infer that they came back negative if you didn't allege they came back positive. So there was a collective knowledge, or an inference should be made from all of his exposure to what was going on at the facility. Again, this wasn't one inmate in one cell who was suffering. It was over half of the housing units. They were talking about it at warden forum meetings. The women were complaining about the scabies infestation. They were complaining in written grievances. Just the sheer amount of people who are infested, it can't be a common rash. It was spreading. Does your case depend on a diagnosis of scabies? No, I don't think it does. Eventually, by the time you get to 2019, the issue was so bad they just started mass giving everyone ivermectin without even letting them see a doctor, which is problematic under their own protocol. But it was so bad that everybody in the facility got several rounds of treatment for scabies. So there were many women who were suffering, in some cases for years, who never got a diagnosis but got the treatment, and eventually, after a few rounds, it did go away. Do you concede that even though this is a putative class action, we're at a motion to dismiss, so we only look at the four named plaintiffs and what their injuries are? I do not, Your Honor. So we have specific allegations related to the named plaintiffs, but we also have allegations related to other inmates that are embedded within the allegations themselves. Because it's a putative class action, we can look at... We don't name them by names in the complaint, but other people's experiences are relevant because we are trying to represent the entire body of infected persons. So let's say that your four named plaintiffs, I think, did all get some kind of treatment. But let's say that your four named plaintiffs all got maybe not completely effective treatment, but let's say they were all diagnosed with scabies and they were all treated and it took a long time for it to go away. You're saying that because there are unnamed plaintiffs who didn't get that treatment, we could allow this action to proceed even if your four got perfectly good treatment? No. Thank you for your question, Your Honor. I'm saying that the fact that they eventually got treatment for an obvious medical need after an unreasonable amount of time went by, that is still a violation of a clearly established right. So, I mean, I would use Plaintiff Smith for an example. But it would have to be conscious shocking, right? So what's your best case that this kind of delay, like the delay that all four plaintiffs got some kind of treatment. You argue some of it came too late and some of it was not sufficiently effective. What's your best case that a delay like that or a failure of treatment like that, although there's some treatment, amounts to conscious shocking behavior? I'll point to Plaintiff Smith and I'll be brief. She first developed her itching and symptoms in January of 2017. She sought medical care. She sought a doctor's visit. It took over a month to get one. She didn't get any treatment from that. She also filed a grievance at that same time. She went back a year later and was told by a nurse that she needed to switch her soap. So again, no treatment at all. She continued to kite. She continued to grieve going into that next year, April. And by June, she still hadn't been treated. So that is a year and a half of suffering with mites burrowing under her skin that she could feel moving around when she was trying to sleep at night. It was not pleasant. At least it doesn't adhere to my understanding of her conventional, ordinary acceptance of what is appropriate in society. So I thank you for your time. I ask you to affirm the court's ruling. Thank you. Thank you, Your Honors. Just a few points I'd like to make. First of all, I think one of the important things, and I think all of you have pointed this out, there are four plaintiffs in this case. No class has been certified, so it has to focus on the allegations that these specific plaintiffs made. And it's clear in the record that every single one of them did receive some form of treatment, that at some point was in fact successful. I mean, there was some statements about Garwood. Garwood experienced a rash in December of 2018. A month later, she was treated with ivermectin. The rash subsided after the second dose. Right, so that maybe is the easiest case. When I asked counsel on the other side about the worst case, she points to Smith. So why don't you address that? Yeah. In January of 2017, she experienced a rash. She was seen by medical staff a month later in February. She was refused outside treatment. That is standard, that unless there's a reason for outside treatment, there's a protocol to follow. Smith admits, though, that she was seen by medical personnel. That's not contested. In October of 2017, she had a rash of red bumps that resembled insect bites. In January of 2018, the rash worsened and spread, and that is true. The nurse advised her to change her soap. Now, that may or may not have been the correct diagnosis. People do have allergic reactions to soap. It's not an unreasonable thing to ask. And that's basically it for Smith. There are no allegations after that. And I think what's important here is the operative complaint in this matter was filed in September of 2020. There's a two-and-a-half-year gap, approximately, where there are no allegations with regard to Smith whatsoever. So we don't know if those rash symptoms continued after that. We don't know how severe they were after that. I'd like to point out, too, because I think each of you on the panel have pointed out something that's important here. We're talking about, essentially, prison administrators, many of whom never have set foot in the prison. They just happen to be involved in health care for the Michigan Department of Corrections in general. If you look at Dara, that was a treating doctor. If you look at Lamarb, which is a case that the district court relied on heavily, that was a treating doctor. If you look at Murray, that's another case that the district court relied on heavily, that was a treating doctor. It seems to me that you, I mean, you certainly have to look at the individual allegations, but you also have to look at what was going on at the time, right? I mean, four isolated complaints about a rash is one thing, but if somebody comes to you and complains about a rash, and there have been six other people that morning who complained about rash, and complaints going to the warden and all the rest, it just seems to me to be a completely different situation. I think there's a yes and a no answer to that. I see my time has expired, but if I could answer your question. There's a yes and a no answer to that. The context is certainly important, but we still have to focus on these four plaintiffs here and what the defendants knew or did not know with regard to those four defendants. Now, one of the questions you asked, Judge White, was when was Scabies diagnosed. It was diagnosed in December of 2018. And Ms. Bailey, a plaintiff at Police Council, is absolutely correct. A month after that, maybe not exactly a month, every inmate was provided with ivermectin as a prophylactic measure to treat it. And sometimes it took more than one treatment. You are also correct, Judge Murphy, this is not an easy condition to diagnose. It's not necessarily an easy condition to treat. But once it was known what it was, it was treated, the treatment was effective, and the outbreak ended. And I don't think it's contested that it ended for each of the four individual plaintiffs. Is there a problem? Most of the Scabies cases I've seen, the delays are not as egregious as in this case, I guess. But the suggestion is that it started in 2016 and you didn't get to diagnosing it until December of 2018. That's a pretty long gap. It's a long gap. Fair enough. But again, amongst the individual plaintiffs here, my understanding is it's only Pearson who experienced symptoms of a rash in December of 2016. There's nothing in the record in this complaint which is what we have to go by to indicate that she was ever diagnosed with Scabies. And I think that that is important here because if this court takes a step and says, okay, you know, Scabies meets all of these criteria for a serious medical condition, fair enough. Once the Scabies was diagnosed, the Scabies was treated. But an allegation of a rash is not the same thing as Scabies. And again, once the Scabies was diagnosed, it was in fact treated. And this is simply not behavior that is conscious shocking. If there's one last thing I can say, in Moore v. Oakland County, this court stated that if you're going to find something clearly established, it's incumbent upon the plaintiff to find the case that clearly establishes the precedent. I don't think plaintiffs have done it here, either in a general sense or a more particularized sense, either in terms of Scabies or when we look at the deliberate indifference and the fact that all of the named plaintiffs were provided with medical treatment. Thank you, and thank you, Your Honor.